# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA
# SOUTHERN DIVISION

| | |
|---|---|
| Midwest MFG, LLC, d/b/a Circle R Truck Bed Extender, | Civil Action No.: 4:21-cv-4216 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Curt Manufacturing, LLC d/b/a Curt Group, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Midwest MFG, LLC, d/b/a Circle R Truck Bed Extender, for its Complaint against Defendant Curt Manufacturing, LLC d/b/a Curt Group, states and alleges as follows:

## THE PARTIES

1. Plaintiff Midwest MFG, LLC, dba Circle R Truck Bed Extender ("Midwest") is a corporation organized under the laws of the State of South Dakota, with its principal place of business in Tea, South Dakota.

2. Upon information and belief, Defendant Curt Manufacturing, LLC ("Curt") is a Delaware limited liability company authorized to conduct business in South Dakota, with a principal place of business in Eau Claire, Wisconsin that conducts business under the name "Curt Group." Curt is a sales, marketing, engineering and distribution company of towing products and truck accessories with warehouses throughout the United States and Canada, including a warehouse located at 1200 E. Birch St., Brandon, South Dakota 57005.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this is an action for trade secret misappropriation arising under the Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq.* This Court has jurisdiction over Midwest's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to Midwest's trade secret misappropriation claims that they form the same case or controversy within the meaning of that statute.

4. This Court has personal jurisdiction over Curt because it has a place of business in this District and, on information and belief, regularly does or solicits business in this District, engages in a persistent course of conduct in this District, and/or derives substantial revenue from things made, used, or consumed in this District. Further, Curt has caused tortious injury to Midwest in this District through its acts of trade secret misappropriation and conversion.

5. In addition, this Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because the parties have complete diversity in their citizenship and the amount in controversy exceeds $75,000.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b) because Curt "resides" in this District within the meaning of that statute and because a substantial part of the events giving rise to Midwest's claims occurred in this District.

## FACTUAL ALLEGATIONS

7. Midwest is the owner of certain intellectual property relating to a truck bed extender invention. Midwest purchased the intellectual property from the family trust of inventor Randy Reed following his death and transferred it to Midwest's name.

8. On January 16, 2020, Midwest and Curt entered into a Non-Disclosure Agreement ("NDA"), the purpose of which was for Curt to evaluate Midwest's intellectual property,

proprietary information, and know-how relating to its truck bed extender invention to see if a relationship could be established for the manufacture and/or private labeling of the Circle R Truck Bed extender. A true and correct copy of the NDA is attached hereto as **Exhibit 1**.

9. Under Paragraph 1 of the NDA, all written and oral information provided by Midwest to Curt under the NDA was Confidential Information, regardless of the date or method it was provided to Curt.

10. "Confidential Information" was defined under paragraph 2 of the NDA to mean "all data and information relating to the invention as well as data and information relating to [Midwest], including, but not limited to" "Customer Information," "Intellectual Property," "Marketing and Development Information," "Business Operations," "Product Information," "Production Processes," "Service Information," "Proprietary Computer Code," "Computer Technology," and "Accounting Information," each of which was further defined under the NDA.

11. Paragraph 2b of the NDA defined "Intellectual Property" to include "information relating to [Midwest's] proprietary rights to any public disclosure of such information, including, but not limited to, the nature of the proprietary rights, production data, technical and engineering data, technical concepts, test data and test results, simulation results, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including patents, copyrights and trade secrets)."

12. Paragraph 2c of the NDA defined "Marketing and Development Information" to include "marketing and development plans of [Midwest], price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of

obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of [Midwest] which have been or are being discussed."

13. Paragraph 2d of the NDA defined "Business Operations" as including, among other things, "purchasing and internal cost information."

14. Paragraph 2e of the NDA defined "Product Information" to include "all specifications for products of [Midwest] as well as work product resulting from or related to work or projects of [Midwest], of any type or form in any stage of actual or anticipated research and development."

15. Paragraphs 4 and 5 of the NDA provided that "[e]xcept as otherwise provided in this Agreement, [Curt] must not disclose the Confidential Information," that "Confidential Information…will only be used by [Curt] for the Permitted Purpose," and that Curt "will not use the Confidential Information for any purpose that might be directly or indirectly detrimental to [Midwest] or any of its affiliates or subsidiaries."

16. The "Permitted Purpose" was Curt's evaluation of Midwest's proprietary information and know-how relating to the Circle R Truck Bed Extender product for possible patent, development, and marketing.

17. Paragraph 6 of the NDA provides that the obligations imposed on Curt by the NDA survive expiration or termination of the NDA and continue for a period of two years form the expiration or termination date.

18. Paragraph 9 of the NDA provides that "[n]othing contained in this Agreement will grant to or create in [Curt], either expressly or impliedly, any right, title, interest or license in or to the intellectual property of [Midwest]."

19. In or around early April 2020, Midwest sent Curt two Circle R Bed extender units and asked to set up a time to discuss the project.

20. One of the Circle R Bed extender units Midwest sent to Curt was intended for review by the Curt engineering team in Brandon, SD.

21. On information and belief, the second Circle R Bed extender unit Midwest sent to Curt was shipped by Curt internally to one of its other facilities.

22. Around the same time Midwest sent Curt the two Circle R Bed extender units, the parties agreed to have a telephone call on May 7, 2020, to include Zeke Hollaren, Joel Diller (Director of Engineering), and Jesse Bauer (Director of Product) for Curt, and Josh Jones and Michael Kloth for Midwest.

23. During a meeting on or about May 7, 2020, the Curt representatives requested certain additional information regarding the Midwest intellectual property.

24. On or about May 11, 2020, Jones provided Curt a copy of the patent covering the invention as well as detailed and voluminous technical data, drawings, and specifications used for assembly of Midwest's truck bed extender product. Jones explained the original design and a modification that resulted from customer need and issues with the original design. He stated that "the feature that sets the Circle R Truck Bed Extender apart from other similar products is the lack of required modification to the original design of the vehicle." Jones proposed a price for which Midwest would sell Curt the patents, technical drawings, and inventory related to the truck bed extender invention. Jones reminded the Curt representatives, "Please understand this is 100% confidential."

25. Later that same day, Bauer asked Jones to provide "examples of what modifications are required of competitive products" in response to Jones's statement that "the feature that sets

the Circle R Truck Bed Extender apart from other similar products is the lack of required modification to the original design of the vehicle." Jones responded with detailed technical information regarding modifications competitors would require and described how one competing truck bed extender product would be installed on a truck as compared to the Circle R product.

26. On or around May 12, Bauer asked for Jones's input on pricing and material selection for a potential truck bed extender product. Jones responded with information regarding Midwest's internal cost data and pricing strategies for its own truck bed extender product and provided potential estimates for Curt's costs, profits, and margins. Jones also commented on potential material selections for the Curt products, offered suggestions for additional products and accessories that could expand Curt's line of products, and the associated benefits of such products and accessories.

27. On or around May 26 and 27, 2020, Jones sent Bauer additional information regarding pricing and sales data for the Midwest truck bed extender product. The sales data Midwest provided Curt included sales from Midwest's own website and from Amazon.com.

28. On or around May 29, 2020, Jesse Bauer from Curt sent Midwest a proposed counteroffer for a royalty deal. The offer was unacceptable to Midwest. Jones explained that Midwest had "put a lot of thought into the value of this product. The patents, drawings, design, quality, time left on the Patent. These are all completed ready for a company of your size to dominate in the market and get rolling on a product line that you will crush your competition on, and would be a great addition to your already dominating SKU line up." Jones followed up with a "bottom dollar" figure.

29. On or around June 15, 2020, Jones sent an e-mail asking for an update and suggested a revised proposal. Jones explained, "If we are going to try and come to an agreement,

the sooner the better as I would consider this deal extremely fair. If not I will have to push forward with other opportunities so we don't miss out on those as well."

30. On or around June 16, 2020, Jones communicated to Curt that he needed to respond on another opportunity by June 18, 2020, and that he was "[g]etting a little pressure from this other company and just wanted some clarification from you guys." Bauer informed Jones that "Tomorrow at 7:30 am we have a product steering meeting with the executive team. I have a slide t'd up with your offer below. I'll let everyone know you need an answer tomorrow and we'll go from there."

31. On or around June 24, 2020, Jones sent Bauer some additional options for a potential deal. He indicated "I will let you and your team decide if any of these options make sense for your company. If not, we will have to move onto the other options…This product would dominate with your brand for many years. This bed extender is solid. With your brand it will be an excellent investment." He continued, "Out of respect for our earlier conversations I'll again give you guys the first option for a yes or now. That being said, the decision will need to be made pretty quick…so we can move on one way or another without creating bad business between us. I just need a simple yes or now, or discuss any questions you have."

32. On or around June 25, 2020, Bauer e-mailed Jones to inform him Curt was going to "respectfully pass on the opportunity as we have many projects on our plates and we would prefer to pursue alternate cargo management opportunities in the future."

33. On or around July 1, 2020, Jones e-mailed Bauer with a private labeling opportunity. He indicated that Midwest had a company lined up to make the product and the pricing set. He wrote, "I can discuss further if this interests you…We have other options, but

wanted to reach out to you first." Bauer responded that day to indicate Curt would not be interested in Midwest's private labeling proposal, noting "This model unfortunately would not work for us."

34. Curt kept the Circle R Bed Extender units Midwest had sent to Curt for evaluation and did not return any of the engineering data, drawings, or specifications, or any of the cost, pricing and sales information.

35. After declining to pursue a business opportunity with Midwest, and while still in possession of Midwest's trade secrets and confidential information, Curt began selling a competing product referred to as the "Curt Universal Truck Bed Extender with Fold-Down Tailgate" nearly identical to Midwest's truck bed extender product.

## COUNT I

## BREACH OF CONTRACT

36. Midwest incorporates by reference the above paragraphs as if stated herein.

37. The NDA is a valid and enforceable contract between Midwest and Curt.

38. Pursuant to the NDA, Midwest provided Curt access to Midwest's confidential information, including, without limitation: engineering data, drawings, and specifications; financial information such as cost, pricing, and sales information; and technical advice regarding additional potential products, accessories, and selling pieces that could expand Curt's line of products. This information was not publicly available in Midwest's patent or otherwise, so it thus constituted "Confidential Information" under the NDA.

39. Curt improperly used Midwest's Confidential Information as a head start to develop and introduce its own nearly identical competing product to the detriment of Midwest and in breach of Curt's obligations under the NDA.

40. Midwest also breached the NDA by keeping the Circle R Bed Extender units Midwest had sent to Curt for evaluation, and failing to return any of the engineering data, drawings, or specifications, or any of the cost, pricing and sales information.

41. Curt's breach of the NDA damaged Midwest in an amount to be determined at trial.

## COUNT II

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT

42. Midwest incorporates by reference the above paragraphs as if stated herein.

43. The technical data, drawings, and specifications used for assembly of Midwest's truck bed extender product; and Midwest's internal cost data, pricing strategies, and sales data for its truck bed extender product constitute protectable trade secrets that relate to products used in or intended for use in interstate commerce.

44. Midwest's trade secrets were not publicly available in Midwest's patent or otherwise. Midwest has taken reasonable measures to keep the information secret, including, for example, through use of Non-Disclosure Agreements like the NDA.

45. Midwest's trade secrets derive independent economic value from being not generally known to and not being readily ascertainable through proper means because they allow Midwest to benefit from its advantage in the market as it relates to competing products.

46. Curt knew or had reason to know that the information it acquired and/or used were trade secrets.

47. Curt acquired the trade secrets under circumstances giving rise to a duty to maintain its secrecy or limit its use.

48. Curt misappropriated Midwest's trade secrets by showing interest in a deal with Midwest regarding Midwest's truck bed extender product, gaining access to Midwest's trade secret

information under the guise of the NDA, and improperly using Midwest's trade secret information without Midwest's consent to develop and introduce its own nearly identical competing product. Having never made a product like this before, Curt improperly used Midwest's trade secrets to get a head start on developing and introducing a competing product in the marketplace.

49. Curt's misappropriation of Midwest's trade secrets was willful and malicious.

50. Midwest has suffered and will continue to suffer irreparable injury as the result of Curt's misappropriation of Midwest's trade secrets.

51. Midwest is entitled to actual damages, including but not limited to lost profits plus damages for unjust enrichment caused by Curt's misappropriation of Midwest's trade secrets and/or a reasonable royalty the amounts of which shall be determined at trial.

## COUNT III

## CONVERSION

52. Midwest incorporates by reference the above paragraphs as if stated herein.

53. Midwest owned and/or had a possessory interest in tangible and intangible property consisting of assets, products, and technology that included, without limitation: Circle R Bed extender units Midwest sent to Curt for evaluation; engineering data, drawings, and specifications; and financial information such as cost, pricing, and sales information.

54. Midwest's interest in the property was greater than Curt's interest in the property.

55. Upon information and belief, Curt exercised dominion and control over the property and seriously interfered with Midwest's interest in the property. Curt kept the Circle R Bed Extender units Midwest had sent to Curt for evaluation, and also did not return any of the engineering data, drawings, or specifications, or any of the cost, pricing and sales information.

56. Curt's conduct deprived Midwest of its interest in the property.

57. Midwest is entitled to money damages as a result of Curt's unlawful conversion in an amount to be determined at trial.

## COUNT IV

### UNJUST ENRICHMENT

58. Midwest incorporates by reference the above paragraphs as if stated herein.

59. Upon information and belief, a benefit was received by Curt when it received access to Midwest's confidential and proprietary information and thereafter used that confidential and proprietary information to develop and introduce its own nearly identical competing product.

60. Upon information and belief, Curt was cognizant of the benefit conferred upon it, particularly to the extent Curt's representatives continued to request additional information from Midwest, Midwest continued to provide such information, and Curt used such information to develop and introduce its own nearly identical competing product.

61. Curt's retention of the benefit of Midwest's confidential and proprietary information without reimbursement to Midwest would unjustly enrich Curt.

62. Midwest is entitled to money damages amounting to the unjust benefit to Curt in an amount to be determined at trial.

## COUNT V

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS OR EXPECTANCY

63. Midwest incorporates by reference the above paragraphs as if stated herein.

64. Midwest had a valid business expectancy in the form of sales of its truck bed extender product to customers and/or potential customers, including, but not limited to, Menards, Fastenal, and Martin Technologies, and through the Amazon.com and eBay sales platforms.

65. Curt had knowledge of Midwest's business and expectancy by, among other things, Midwest's disclosure to Curt of Midwest's sales information, sales channels, and strategies.

66. Curt intentionally and unjustifiably interfered with Midwest's business expectancy by using Midwest's confidential and proprietary information to develop and introduce its own competing product, thereby interfering with Midwest's ability to sell its own product to potential customers.

67. Curt's interference caused harm to Midwest in the form of decreased sales, resulting in damage to Midwest.

68. Midwest is entitled to money damages resulting from Curt's tortious interference in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Midwest prays for relief as follows:

1. A judgment that Curt has breached the NDA, and awarding Midwest damages for such breach in an amount to be determined at trial;

2. A judgment that Curt has misappropriated Midwest's trade secrets and that such misappropriation was willful and malicious, and awarding Midwest damages for such misappropriation in an amount to be determined at trial but not less than a reasonable royalty;

3. A judgment that Curt has improperly converted Midwest's property in violation of South Dakota law and awarding Midwest damages for such conversion in an amount to be determined at trial;

4. A judgment that Curt has been unjustly enriched and awarding Midwest damages for such unjust enrichment in an amount to be determined at trial;

5. A judgment that Curt has tortiously interfered with Midwest's business expectancy and awarding damages for such interference in an amount to be determined at trial;

6. A judgement awarding Midwest exemplary damages for Curt's willful and malicious misappropriation of Midwest's trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(C);

7.  A judgment awarding Midwest its costs incurred herein, including attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D); and

8.  A judgment awarding Midwest such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Midwest hereby demands a jury trial as to all issues so triable.

Dated this 9th day of December, 2021.

        REDSTONE LAW FIRM LLP

        _/s/ *Lisa M. Prostrollo*_____
        Lisa M. Prostrollo
        1300 W. 57th Street, Suite 101
        Sioux Falls, SD 57108
        (605) 331-2975
        lisa@redstonelawfirm.com

        Devan V. Padmanabhan (admission pending)
        Erin O. Dungan (admission pending)
        PADMANABHAN & DAWSON, P.L.L.C.
        45 South 7th Street, Suite 2315
        Minneapolis, MN 55402
        Telephone: (612) 444-3601
        devan@paddalawgroup.com
        erin@paddalawgroup.com

        *Attorneys for Plaintiff Midwest MFG, LLC*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Midwest MFG, LLC, dba Circle R Truck Bed Extender

**DEFENDANTS**
Curt Manufacturing, LLC d/b/a Curt Group

**(b)** County of Residence of First Listed Plaintiff: Lincoln
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Minnehaha
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lisa Prostrollo - Redstone Law Firm LLP
1300 W. 57th Street, Suite 101, Sioux Falls, SD 57108
(605) 331-2975

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [x] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1836 et seq.

Brief description of cause:
Misappropriation of trade secrets, breach of NDA, conversion, unjust enrichment, tortious interference with business expectancy

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: December 9, 2021
SIGNATURE OF ATTORNEY OF RECORD: /s/ Lisa M. Prostrollo

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____