UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MIDWEST MFG, LLC, d/b/a Circle R Truck Bed Extender<br><br>Plaintiff,<br><br>vs.<br><br>CURT MANUFACTURING, LLC, d/b/a Curt Group<br>Defendant. | 4:21-CV-04216-RAL<br><br>OPINION AND ORDER ON MOTIONS IN LIMINE |

In advance of a jury trial set to begin on September 17, 2024, Defendant Curt Manufacturing, LLC (Curt) filed their Motions in Limine, Doc. 79. On September 11, 2024, this Court held a hearing and heard argument on those motions. This Court now grants in part and denies in part those motions in limine.

I.   **Standard on Motions in Limine**

Rulings on motions in limine are by their nature preliminary. United States v. Spotted Horse, 916 F.3d 686, 693 (8th Cir. 2019). They "developed pursuant to the district court's inherent authority to manage the course of trials," Luce v. United States, 469 U.S. 38, 41 n.4 (1984), and are "specifically designed to streamline the presentation of evidence and avoid unnecessary mistrials," Spotted Horse, 916 F.3d at 693. This practice helps safeguard the jury from hearing evidence so prejudicial that its mention could not be remedied through a corrective instruction. Motion in limine, Black's Law Dictionary (11th ed. 2019). Rulings on motions in limine necessarily occur before the nature and relevance of the evidence can be placed in full context.

See Spotted Horse, 916 F.3d at 693. Therefore, a district court has broad discretion when ruling on motions in limine and retains the authority to revisit and change its rulings based on how the case unfolds. Luce, 469 U.S. at 41–42. If this Court grants a motion in limine to exclude certain information, that information must not be mentioned during voir dire, opening statements, questioning or answering by witnesses, or closing arguments, unless counsel outside the hearing of the jury obtain from this Court a contrary ruling.

## II.  Defendant's Motion in Limine

### A. Curt's Size and Financial Condition

Curt moved this Court to exclude any evidence concerning "Curt's size, financial condition, budget, net worth, or comparative wealth, or concerning the size, financial condition, or net worth of any people or entities related to Curt, including its parent company, Lippert Components, Inc." Doc. 80 at 1. Curt argues that such evidence is irrelevant, and its probative value is substantially outweighed by the risk of unfair prejudice. Id. Curt further argues that the only possible purpose for such evidence is to generate jury sympathy for Plaintiff Midwest MFG, LLC (Midwest). Id. at 3. Midwest opposes Curt's motion and argues that Curt's size and financial condition are relevant to proving Midwest's claims for misappropriation of trade secrets and breach of contract and to show "the harm Midwest suffered as a result of Curt's improper conduct." Doc. 82. In short, Midwest argues that Curt not having knowledge of Midwest's Circle R Truck Bed Extender despite being a sizeable company in the automotive accessory business is relevant to whether Midwest had closely-guarded trade secrets and confidential information and that Curt's business advantages in launching its own similar product allegedly based on what it learned from Midwest matters to the damages claim. Curt's general industry standing, core competencies, and size, such as the number of Curt employees, have some relevance to Midwest's claims, and that

information's probative value is not substantially outweighed by unfair prejudice. Thus, Curt's motion is denied to the extent that Curt's employee size, industry standing, and core competencies will be admissible. To the extent that Curt seeks to exclude references to Curt's financial condition, budget, net worth, or comparative wealth, and to exclude the size, financial condition, and net worth of Curt's parent company, Lippert Components, Inc., the motion is granted.

### B. Computation of Damages

Curt moved this Court to exclude "Midwest's damages expert, Timothy J. Nantell, Ph.D., from offering any opinions or bases regarding computation of damages that were not timely disclosed in his expert report." Doc. 80 at 4. Dr. Nantell is limited to testifying to computations of damages that were disclosed in his report and that were not excluded by this Court. Under the Order Granting in Part and Denying in Part Defendant's Motion to Exclude Opinions and Testimony of Dr. Timothy J. Nantell, Dr. Nantell cannot testify about his calculations characterized as aftermarket unjust enrichment damages, aftermarket compensatory damages and compensatory conversion damages. Doc. 65. He may testify and offer opinion on the computation of "other market" unjust enrichment damages and compensatory damages. Doc. 65. Midwest does not object to limiting Dr. Nantell's testimony to these types of damages and presented an explanation of the methodology for its $3.1 million damage calculation. Doc. 82 at 6. Thus, Curt's motion is granted to the extent that it seeks to exclude Dr. Nantell from testifying or offering an opinion on computation of damages other than actual unjust enrichment damages, "other market" unjust enrichment damages, and "other market" compensatory damages.

Midwest referenced evidence from its own witnesses of compensatory damages, which at the hearing Midwest clarified was the year-to-year income projections it shared with Curt in 2020. Midwest may present evidence of the year-by-year revenue projections Midwest shared with Curt

and argue for damages based on those numbers as an alternative calculation, but will not be allowed to introduce other damage calculations not disclosed to Curt.

C. **Trade secrets**

Curt moved this Court to prevent Midwest from "making references to alleged trade secrets that were found on summary judgment to not qualify as trade secrets, as well as any reference to Midwest's claims that Curt misappropriated any such dismissed trade secrets." Doc. 80 at 6. Curt argues that the dismissed trade secret claims are irrelevant to all remaining claims and will unfairly prejudice Curt, confuse the jury, and waste time by relitigating the issues. Id. Midwest opposes the motion, arguing that the "Formerly Alleged Trade Secrets" may still qualify as "Confidential Information," which is relevant to the breach of contract claim. Doc. 82 at 7-8. This Court plans to give a limiting instruction directing the jurors that the trade secrets claims extend only to the competitive benefits of the Circle R product's three-piece design and the estimated sales, profits, and revenue projections Midwest created for Curt. The claim for breach of the non-disclosure agreement is broader and some matters ruled not to be trade secrets theoretically could remain confidential under the non-disclosure agreement.

D. **Confidential Markings**

Curt moved this Court to exclude "all confidentiality designations placed on any trial exhibits which were applied as part of the litigation after Midwest filed this lawsuit." Doc. 80 at 10. Curt argues that such evidence is irrelevant and will create jury confusion and prejudice Curt. Id. at 10-11. Midwest opposes Curt's motion, arguing that removal of the confidentiality markings will increase the risk of inadvertent disclosure of Midwest's trade secrets and confidential information. Doc. 82 at 12. Instead, Midwest proposes that the Court enter an order precluding

references to the confidentiality markings and to instruct the jury to give no weight to the markings. Id. at 14-15.

The confidentiality markings were placed on the exhibits after litigation began. They are irrelevant to the issues in this case. See Sutphin v. Ethicon, Inc., No. 2:14-cv-01379, 2020 WL 5079170, at *5 (S.D. W. Va. Aug. 27, 2020) ("Time after time, this court has ruled that whether a document is designated as confidential is entirely irrelevant."); BladeRoom Grp. Ltd. v. Facebook, Inc., No. 5:15-CV-01370, 2018 WL 1569703, at *5 (N.D. Cal. Mar. 30, 2018) (same). However, based on the nature of the claims, whether information was confidential is a key issue in this case. First, to prevail on its trade secrets claim, Midwest must prove that it took "reasonable measures to maintain the secrecy of the [alleged trade secrets]." 18 U.S.C. § 1839(3). A jury could infer that post-litigation marking documents as "confidential" is evidence of measures to maintain secrecy. See Karma Automotive LLC v. Lordstown Motors Corp., No. 8:20-cv-2104, 2022 WL 20401205, at *4 (C.D. Cal. Dec. 12, 2022). Second, Midwest's breach of contract claim turns on whether Curt used confidential information provided to Curt by Midwest. There is a risk that confidentiality markings placed on documents after litigation will mislead the jury into thinking the documents were designated as confidential when sent in 2020 by Midwest to Curt, or, alternatively, that the absence of a marking of a document provided in 2020 from Midwest to Curt means that the material must not really be a trade secret or confidential.

For reasons explained during the pretrial conference and motion hearing, this Court grants Curt's motion to the extent that all confidentiality designations placed on any trial exhibits which were applied after Midwest filed this lawsuit and as part of litigation should be removed or redacted. That way, the jury can decide apart from post-litigation marking of confidentiality what, if any, materials supplied by Midwest to Curt qualify as trade secrets or confidential information.

Curt is precluded from making any argument about Midwest's failure to stamp documents confidential prior to litigation as proof that the documents do not contain trade secrets or confidential information; after all, the non-disclosure agreement did not require Midwest to do so. However, Curt may offer evidence and make argument about Midwest noting that one communication was confidential but failing to communicate that certain other information was confidential. If either party holds concerns about the public obtaining confidential information during trial, they may request the Court to have individuals excused from the courtroom at various times. Both parties should designate to the Court what exhibits received in evidence should be sealed.

### E. Unjust Enrichment

Finally, Curt moves this Court to exclude "any argument, expert testimony, or other evidence in support of [Midwest's] entitlement to unjust enrichment damages premised on anything other than its two surviving trade secret claims." Doc. 80 at 14. Curt argues that unjust enrichment is not an available remedy for a breach of contract claim under South Dakota law. Id. at 15. Midwest opposes exclusion of such evidence, arguing unjust enrichment is an available remedy for a breach of contract claim. Doc. 82 at 18. This Court will reserve ruling on this issue because it impacts how to instruct the jury on recoverable damages on the breach of contract claim and does not impact admissibility of the damage calculations generally.

### III. Conclusion

Therefore, for good cause, it is hereby

ORDERED that Curt's Motion in Limine, Doc. 79, is granted in part and denied in part as set forth in this order.

DATED this 12th day of September, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE